**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAXINE CATLIN,** | : | **Civil No. 3:16-CV-249** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

For social security disability claimants who are struggling with mental health challenges, a key component to any disability evaluation is an assessment of the claimant's ability to function in the workplace. This evaluation involves a multi-faceted assessment of an array of skills, including social functioning. Oftentimes that assessment entails fundamental credibility determinations.  When an Administrative Law Judge (ALJ) engages in this process, it is axiomatic that, while the ALJ possesses broad discretion in this field, the ALJ may not make these credibility determinations "for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

This case calls upon us to revisit this familiar principle.  In this case, the ALJ denied disability benefits to an 18 year old woman, after making basic credibility

determinations regarding the severity of her mental health conditions.  In the course of making these determinations, the ALJ repeatedly cited the plaintiff's sexual history, a history marked by reported acts of violence and impulsivity, to conclude that the plaintiff's social functioning skills were relatively intact.  In our view, this analysis rests upon false, erroneous, and wholly inappropriate equivalence drawn by the ALJ which somehow equated sexuality and reported sexual violence with social functioning.  Because we cannot determine the extent to which this false equivalence colored and distorted the assessment of this case, for the reasons set forth below, we recommend that this case be remanded for further consideration by the Commissioner.

## II.  Statement of Facts and of the Case

### A.  Relevant Medical Evidence

Ms. Catlin was only eighteen years old when she filed an application for Supplemental Security Income under Title XVI of the Social Security Act.  In her application, Ms. Catlin alleged a disability onset of September 1, 2006, and claimed that she was unable to work due to the combined effects of a constellation of mental health issues including learning disabilities, anger problems, and depression.  (Admin. Tr. 148).

During her hearing, Ms. Catlin alleged that she had difficulty focusing, anxiety; an irrational fear of germs; dislike of social interactions in both personal and professional environments; an inability to tolerate a fast-paced work environment; anger management issues resulting in physically violent behavior towards friends and boyfriends; and auditory hallucinations.  In a function report, Ms. Catlin alleged that her conditions affect her ability to remember, complete tasks, concentrate, understand, and follow instructions.  (Admin. Tr. 168).  On the issue of social functioning, Ms. Catlin reported that she is lovable person but only "kind of" gets along with her teachers because they are very mean sometimes. (Admin. Tr. 169).   Ms. Catlin testified that she has had friends and boyfriends but reported that two of her past relationships ended after she physically assaulted her significant other.  (Admin. Tr. 37).  Similarly, although Ms. Catlin reported having friends, she recounted that on one occasion she was almost arrested when she and a female friend were about to fight in the street.  (Admin. Tr. 39).  There is no indication that these altercations resulted in any legal issues.  There is no indication that Ms. Catlin sought medical treatment after any of the alleged physical altercations.

In February 2011, Ms. Catlin was examined at the emergency room with complaints of depression and suicidal ideation.  (Admin. Tr. 388).  Ms. Catlin

reported that she had recently transferred schools and was having a lot of problems.  After talking with crisis, Ms. Catlin was diagnosed with depression and school stress, and was discharged home.  (Admin. Tr. 338).  Sometime thereafter, Ms. Catlin transferred to an online charter school and was placed on an individualized education plan ("IEP").  Testing revealed that Ms. Catlin had borderline to low learning abilities.  (Admin. Tr. 242).  After transferring to an online program, Ms. Catlin's grade point average increased from 1.77 to 3.53.  She graduated from high school in June 2012.

In August 2012, Ms. Catlin began pursuing a degree in criminal justice at Harrisburg Area Community College ("HACC").  Records reflect that Ms. Catlin was discharged from medication management at T.W. Ponessa & Associates in October 2012 due to non-attendance, (Admin. Tr. 224), but resumed treatment in February 2013.  (Admin. Tr. 293).  Ms. Catlin stopped seeing her therapist in April 2013.  Records reflect that Ms. Catlin had a change in living situation and could not make it to her weekly appointments.  (Admin. Tr. 284).  Ms. Catlin attempted to schedule bi-weekly appointments but was discharged from care in June 2013 after she missed several appointments.  (Admin. Tr. 283, 284).  Her discharge

diagnoses included major depressive disorder (moderate, recurrent, without psychotic features), intermittent explosive disorder, and trichotillomania ("TTM").[1]

On March 8, 2013, Ms. Catlin was referred to neuropsychologist Christopher Royer ("Dr. Royer") for a consultative examination in connection with her application for benefits.  During the examination Ms. Catlin confessed to anger issues, and reported that she does not like to be around people or to be touched. (Admin. Tr. 271).  Dr. Royer administered the Third Edition of the Wechsler Adult Intelligence Scale test, and determined that Ms. Catlin's Verbal IQ was 75 (borderline), her Performance IQ was 67 (impaired), and her full scale IQ was 69 (impaired).  (Admin. Tr. 272).  Dr. Royer observed that Ms. Catlin was easily frustrated when going through testing.  Id.  Dr. Royer diagnosed mathematic disorder, "rule out" nonverbal learning disorder, and bipolar II disorder.  (Admin Tr. 274).  In an accompanying medical source statement, Dr. Royer assessed that Ms. Catlin would have "extreme" difficulty (i.e., no useful ability) making judgments on simple work-related decisions secondary to low IQ and impulsivity, and "extreme" difficulty interacting appropriately with coworkers secondary to immaturity, limited social skills, and anger.  (Admin. Tr. 275).  He assessed that

---

[1] Trichotillomania is an impulse disorder characterized by compulsive pulling out of one's hair associated with tension or an irresistible urge.  Dorland's Illustrated Medical Dictionary 1965 (32nd 3d 2012).

Ms. Catlin would have "marked" difficulty:   understanding, remembering, and carrying out detailed instructions; interacting appropriately with the public and supervisors; and responding appropriately to pressures, and changes in a usual or routine work setting.  Id.  Dr. Royer also assessed that Ms. Catlin would have "moderate" difficulty understanding, remembering, and carrying out short, simple instructions.  Id.

In connection with the initial review of Ms. Catlin's claims, the available evidence, including Dr. Royer's report and medical source statement, were examined by State agency psychologist Elizabeth Hoffman.  Dr. Hoffman assessed that there was sufficient evidence to establish that Ms. Catlin had been diagnosed with bipolar II disorder, personality disorder, learning disability, and borderline intellectual functioning.  (Admin. Tr. 62).  She opined that these impairments resulted in moderate restriction of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  (Admin. Tr. 59).  Dr. Hoffman also assessed that, despite her impairments, Ms. Catlin retained the capacity to understand, remember, and carry out simple one and two part instructions, would have difficulty interacting with the public, co-workers, and

supervisors, and would have difficulty responding to changes and pressures in the workplace.  (Admin. Tr. 62).

On March 20, 2013, Ms. Catlin's application was denied at the initial level of administrative review.   Thereafter, Ms. Catlin requested a hearing, and continued to supplement the record until the hearing took place.

On January 30, 2014, Ms. Catlin was examined at the emergency room with complaints of suicidal thoughts.  During the examination Ms. Catlin reported that she had never attempted suicide, but did engage in self-injurious behavior by punching herself and pulling her own hair.  (Admin. Tr. 304).  Ms. Catlin met with crisis intervention and was discharged later the same day.

Ms. Catlin withdrew from HACC in April 2014.  (Admin. Tr. 356).  During her administrative hearing, Ms. Catlin admitted that she planned to begin online studies in August 2014.  (Admin. Tr. 48).

On June 3, 2014, Ms. Catlin was examined at a hospital emergency department following an alleged sexual assault which took place during a trip to New York City with friends.[2]  (Admin. Tr. 349).  Later the same month, Ms. Catlin

---

[2] The alleged sexual assault in June 2014 was, tragically, not the first time Ms. Catlin had claimed to have been sexually assaulted.  In November 2011, Ms. Catlin was examined at the emergency room with complaints of an alleged sexual assault perpetrated the night before.  (Admin. Tr. 321).

resumed therapy at T.W. Ponessa, and sought outpatient counseling in order to address depression and anxiety.  Ms. Catlin reported symptoms of anger outbursts, depression, distractibility, overeating, fatigue, fear of going crazy, dishonestly (with men/boyfriends), mood swings, nervousness, nightmares, panic attacks, poor grades, relationship conflict, and sleep problems.  (Admin. Tr. 356).

### B.    Procedural History & The ALJ's Decision

On June 25, 2014, Ms. Catlin appeared and testified during an administrative hearing before an Administrative Law Judge (the "ALJ").  Ms. Catlin was represented by an attorney throughout the proceedings.  Impartial vocational expert Brian Bierley ("VE Bierley") also appeared and testified.

On September 17, 2014, the ALJ denied Ms. Catlin's application for benefits in a written decision.  In his September 2014 decision denying Ms. Catlin's claim, the ALJ evaluated Ms. Catlin's allegations at each step of the sequential evaluation process.

At step one, the ALJ found that, although Ms. Catlin did work, her work activity did not rise to the level of substantial gainful activity between November 1, 2012, and September 17, 2014 (the "relevant period").  At step two the ALJ found that the evidence of record established the existence of the following medically determinable severe impairments during the relevant period:   learning

disorder, and mood disorder.  At step three the ALJ found that Ms. Catlin did not

have an impairment or combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process the ALJ

evaluated Ms. Catlin's RFC.  The ALJ found that:

> The claimant has the residual functional capacity to perform a full
> range of work at all exertional levels.  In addition, the claimant can
> understand, remember, and carry out up to 3-step instructions with no
> more than occasional changes to the routine work setting.  The
> claimant requires routine repetitive work in a stable environment,
> occasional interaction with members of the public, coworkers and
> supervisors and cannot be expected to work with coworkers as part of
> a team.

(Admin. Tr. 18).

At step four of the sequential evaluation process the ALJ found that Ms.

Catlin had no past relevant work.  The ALJ's findings at step five of the sequential

evaluation process were based on the consideration of the above RFC assessment

and Ms. Catlin's other vocational factors.  The ALJ's conclusions were informed

by the testimony of VE Bierley.  In response to a hypothetical question that

accurately conveyed Ms. Catlin's age, education, work experience, and the ALJ's

RFC assessment, VE Bierley testified that such an individual could engage in the

following occupations:  fusing-machine feeder, DOT# 583.686-014 (with 38,000

positions in the national economy); and press feeder DOT# 583.686-030 (with

52,000 positions in the national economy).  The ALJ ultimately concluded that Ms. Catlin could engage in other work that exists in significant number in the national economy.

In his decision, the ALJ noted that Ms. Catlin alleged the following symptoms in connection with her application for benefits:  difficulty getting along with others; anger management problems; difficulty focusing or paying attention; anxiety; panic attacks; suicidal ideation (twice monthly); auditory hallucinations (once per week); memory problems; loss of interest in activities; and difficulty dealing with stress and handing changes in routine.   (Admin. Tr. 18-19). Inexplicably, to bolster a finding that Ms. Catlin could function in the workplace and was not limited to the degree alleged, the ALJ made frequent reference to Ms. Catlin's tumultuous sexual history, a history that is marked by multiple episodes of sexual violence.

The ALJ's focus on Ms. Catlin's sexual history was not an isolated observation.  Rather, it permeated the decision, with the ALJ citing Ms. Catlin's use of contraceptives, her sexual relations, and her reported history of being a victim of sexual violence, on at least three separate occasions as evidence which was in some way corroborative of the finding that she could successfully perform in the workplace.  (Admin. Tr. 19, 20, 21.)

Following this adverse ruling, Ms. Catlin sought review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review.  Her request was denied on December 15, 2015.  This denial makes the ALJ's September 2014 decision the final decision of the Commissioner of Social Security subject to judicial review by this Court.

Ms. Catlin initiated this action by filing a complaint in this Court on February 11, 2016.  (Doc. 1).  She alleges that the findings of fact made in the Commissioner's final decision denying her claim are not supported by substantial evidence, and that the decision contains one or more errors of law.  As relief Ms. Catlin requests that this Court reverse the final decision denying her claims and enter an order awarding benefits, or in the alternative, vacate the final decision denying her claims and remand this matter for a new administrative hearing.  On April 25, 2016, the Commissioner filed her answer, in which she contends that the ALJ's decision is supported by substantial evidence and was made in accordance with the law and regulations.   (Doc. 8).   Together with her answer the Commissioner filed a certified transcript of the administrative proceedings.  (Doc. 9).

This matter has been fully briefed by the parties and is ripe for decision. (Docs. 11, 12, 13).

11

### III.   Legal Standards

### A.   Substantial Evidence Review – the Role of This Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620

(1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Catlin is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); <u>Burton v. Schweiker</u>, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.   <u>Initial Burdens of Proof , Persuasion and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §416.920(a).  Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); <u>see also</u> 20 C.F.R. §§416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of

14

the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642

F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   Guidelines for the Assessment of a Claimant's Symptoms

The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment.  20 C.F.R. §416.928.  The ALJ is required to consider all symptoms alleged, and in cases where symptoms are not substantiated by objective medical evidence or where conflicts in the evidence exist, assess the extent to which the claimant's description of his or her symptoms can be deemed credible.   20 C.F.R. §416.929(a).   In many cases this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment.  Rutherford, 399 F.3d at 554.

The regulations describe a two-step process for evaluating symptoms.  First, the ALJ must consider whether there is an underlying medically determinable

impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptom alleged.  20 C.F.R. §416.929(b).  If there is no medically determinable impairment that could reasonably produce the symptom alleged, then the symptom cannot be found to affect the claimant's ability to do basic work activities.  Id.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment.  20 C.F.R. §416.929(c)(1).  Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions due to the symptom alleged can be reasonably be accepted as consistent with objective medical evidence and other evidence of record.  20 C.F.R. §416.929(c)(4).  However, an ALJ will not reject symptoms about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence.  20 C.F.R. §416.929(c)(3).  Furthermore, the ALJ need not totally accept or totally reject the claimant's statements, and may find all, some, or none, of the alleged symptoms are credible.  SSR 96-7p, 1996

WL 374186 at *4.[3]  The ALJ may also find that a claimant's allegations are not credible to a certain degree.  Id.

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)).  However, an ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason.  Rutherford, 399 F.3d at 554.

## IV.  **Discussion**

### A.  **The ALJ Erred in Focusing on the Claimant's Sexual History**

In his September 2014 decision denying Ms. Catlin's claim, the ALJ noted that Ms. Catlin alleged the following symptoms in connection with her application for benefits:  difficulty getting along with others; anger management problems;

---

[3] SSR 96-7p, has since been superseded by SSR 16-3p.  The new ruling eliminates the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character."  SSR 16-3p, 2016 WL 2229029 at *1.  A comparison of these rulings reveals that there are few substantive changes.  Both rulings outline a two-step process to evaluate a claimant's subjective statements and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms.  Because the ALJ and the parties cite to SSR 96-7p, we rely on this ruling as well.  However, our analysis would not be different under the new ruling.

difficulty focusing or paying attention; anxiety; panic attacks; suicidal ideation (twice monthly); auditory hallucinations (once per week); memory problems; loss of interest in activities; and difficulty dealing with stress and handing changes in routine.  (Admin. Tr. 18-19).  At the second step of his evaluation of Ms. Catlin's statements about her symptoms, however, the ALJ found that Ms. Catlin's statements about the intensity, persistence and limiting effects of these symptoms are not entirely credible.   In his decision the ALJ discredited Ms. Catlin's allegations that she had difficulty getting along with others.  He explained that:

> Despite the claimant's allegations of difficulty getting along with others, she reported having a boyfriend in January and December 2012 and presented for pregnancy test in December 2012.  The claimant alleged sexual assault in November 2011, but admitted to sexual intercourse with her boyfriend in January 2012.  The claimant declined STD testing on both occasions and declined pressing charges in November 2011 (Exhibit 8F).

(Admin. Tr. 19).

The ALJ's initial focus on Ms. Catlin's sexual history was recast throughout the decision, with the ALJ citing to Ms. Catlin's use of contraceptives, her sexual relations, and her reported history of being a victim of sexual violence, on at least three separate occasions as evidence which was in some way corroborative of the finding that she could successfully perform in the workplace. (Admin. Tr. 19, 20, 21.)

Ms. Catlin contends that the ALJ's assessment in this regard is not supported by substantial evidence and we agree. The Commissioner's policy guidance on the assessment of a claimant's statements about his or her symptoms directs this evaluation cannot be based on an intangible or intuitive notion about the claimant's credibility. SSR 96-7p, 1996 WL 374186 at *4. Instead, it must be supported by the evidence in the case record, and must be sufficiently specific to make clear to the claimant and any subsequent reviewers the reasons why an ALJ credited or discounted certain statements. Id. After reviewing the ALJ's credibility determination we cannot conclude that the ALJ's decision to discount Ms. Catlin's alleged social limitations is supported.

An RFC assessment is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect *his or her capacity to do work-related physical and mental activities*." SSR 96-8p, 1996 WL 374184 at *2(*emphasis added*). "Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C2. Strength in social functioning may be demonstrated by such things as an ability to

20

initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities.   Id.   Conversely, weakness in social functioning may be demonstrated by a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.   Id.

To the extent that the ALJ cites to Ms. Catlin's sexual history to demonstrate non-avoidance of interpersonal relationships, we find that ALJ's rationale is inappropriate, irrelevant, and illogical.   The focus on interpersonal relationships in the context of social functioning appears to be centered on whether a claimant is capable of maintaining meaningful emotional relationships with friends and family members.     The type of stable emotional connection contemplated by the Commissioner's description of social functioning is a concept independent of physical intimacy such the presence of absence of physical intimacy should have no bearing on the ALJ assessment of a claimant's ability to function socially in the workplace.   Thus, to the extent the ALJ relied on Ms. Catlin's sexual history to discount her allegations of deficits in social functioning, we conclude that such reliance is misplaced.[4]

---

[4] The ALJ also cited to the fact that Ms. Catlin is a victim of sexual assault, and chose not to pursue criminal charges with respect to the 2011 assault, to discredit aspects of Ms. Catlin's testimony.   We reiterate that substantial evidence is "such relevant evidence as a *reasonable* mind might accept as adequate to support a conclusion."   Pierce v. Underwood, 487 U.S. at 565 (*emphasis added*).   To the

In another portion of his decision, the ALJ observed that:

Despite the claimant's alleged symptoms and limitations, particularly, her difficulty being around others and being easily angered, she testified going to New York City in June 2014 for three days with friends to attend a concert, frequently going to bars, spending time with friends and her mother and attending community college. The claimant also reported going to her sister's house in New Jersey (Testimony). The claimant reports having boyfriends, being on birth control and being assaulted on two separate occasions after being bars (Exhibits 8F and 9F).

(Admin. Tr. 20).

This passage, however, similarly fails to support the ALJ's assessment. Although Ms. Catlin testified that she went to New York City for three days in 2014 to attend a concert, "[i]t is well-established that sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981). The trip to New York was a one-time event that was not repeated. Our review of the record reflects that there is no evidence upon which the ALJ could reasonably infer that Ms. Catlin frequently goes to bars, as Ms. Catlin only mentioned going to a "club" on two occasions. Although Ms. Catlin did express an intention to return to college, she plans to do so online in an attempt to avoid social interaction. Last, the locations of the alleged sexual assaults perpetrated

_____

extent that the ALJ suggests that Ms. Catlin's history of sexual assault in any way diminishes the credibility of her allegations about her symptoms, we find that that no reasonable mind might accept this inference.

against Ms. Catlin, and use contraceptives, are irrelevant to the determination of whether Ms. Catlin has demonstrated the ability to function in the workplace.

More fundamentally we find that this analysis rests upon entirely false, erroneous, and wholly inappropriate equivalence drawn by the ALJ which somehow equated sexuality and reported sexual violence with social functioning. This conclusion is not only wrong; it flies in the face of case law which has long recognized sexual violence and sexually inappropriate behavior as evidence of impairment, and not proof of social functioning skill.  See e.g., Pounds v. Astrue, 772 F. Supp. 2d 713, 728 (W.D. Pa. 2011); Sheriff v. Barnhart, 244 F. Supp. 2d 412, 421 (W.D. Pa. 2002).  The ALJ's decision suggests that a reported history of sexual abuse is proof of social competence.  It is not, and we cannot discern the degree to which this false equivalence colored the ALJ's final decision.  Therefore, the case should be remanded for further assessment of the evidence.

Because we find a basis for remand, we need not address Ms. Catlin's remaining arguments that the ALJ erred at step two by failing to address Ms. Catlin's impairment due to obesity, erred at step three when he concluded Ms. Catlin did not meet listing 12.05C, improperly weighed the medical opinion evidence of record, and relied on an RFC assessment that was not supported by

substantial evidence.  To the extent that any error exists, it will be remedied on remand following a new administrative hearing.

## V.   <u>Recommendation</u>

Accordingly, because we find that the ALJ's decision is not supported by substantial evidence, IT IS RECOMMENDED that Ms. Catlin's complaint be granted in part as follows:

1. Ms. Catlin's request that this Court enter an award of benefits should be DENIED;

2. Ms. Catlin's request for a new administrative hearing should be GRANTED, and the final decision of the Commissioner denying Ms. Catlin's claim should be vacated, and this case should be remanded to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g); and,

3. Final judgment should be entered in favor of Ms. Catlin and against the Commissioner of Social Security.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party

shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure   to   file   timely   Objections   to   the   foregoing   Report   and Recommendation may constitute a waiver of any appellate rights.

Submitted this 19th day of December 2016.

  *s/Martin C. Carlson*          
Martin C. Carlson
United States Magistrate Judge